DEAKINS ET AL. *v.* MONAGHAN ET AL.

No. 86–890.   Argued October 14, 1987—Decided January 12, 1988

BLACKMUN, J., delivered the opinion of the Court, in which REHNQUIST, C. J., and BRENNAN, MARSHALL, STEVENS, and SCALIA, JJ., joined. WHITE, J., filed a concurring opinion, in which O'CONNOR, J., joined, *post*, p. 205.

*Larry R. Etzweiler*, Deputy Attorney General of New Jersey, argued the cause for petitioners. With him on the briefs were *W. Cary Edwards*, Attorney General, and *Allan J. Nodes* and *Steven Pasternak*, Deputy Attorneys General.

*Edward N. Fitzpatrick* argued the cause for respondents. With him on the brief were *Patrick T. McGahn, Jr., Robert J. Fettweis*, and *Kathy M. Hooke*.*

JUSTICE BLACKMUN delivered the opinion of the Court.

This case presents questions concerning a federal court's obligation to abstain from the adjudication of federal claims

---

*\*Frank Askin, Eric Neisser*, and *John A. Powell* filed a brief for the American Civil Liberties Union Foundation et al. as *amici curiae* urging affirmance.

arising out of an ongoing state grand jury investigation. We granted certiorari, 479 U. S. 1063 (1987), to consider whether the District Court, under *Younger* v. *Harris*, 401 U. S. 37 (1971), was required to abstain from adjudicating respondents' claims for injunctive relief, and, if so, whether the court had the discretion to dismiss, rather than to stay, respondents' additional claims for damages and attorney's fees. Because we have concluded that the first issue is now moot, we vacate that portion of the Court of Appeals' judgment and remand with directions to dismiss all claims for equitable relief. We affirm, however, the remaining portion of the Court of Appeals' judgment reversing the District Court's dismissal of respondents' claims for monetary relief.

I

Respondents William Monaghan, Theodore DeSantis, and John James are in the construction business together. They jointly own respondents Foundations & Structures, Inc. (F & S), and MJD Construction Company, Inc., New Jersey corporations, and William E. Monaghan Associates, a New Jersey general partnership. On October 4, 1984, petitioner Albert G. Palentchar, a criminal investigator for the State of New Jersey, applied to the Honorable Samuel T. Lenox, Jr., the "assignment judge" of the Superior Court for Mercer County with supervisory authority over the state grand jury, for a warrant to search the Tuckahoe, N. J., premises of F & S for evidence of theft, bribery, records tampering, and other criminal activities that were the subject of an ongoing state grand jury investigation. Judge Lenox found probable cause and issued a warrant authorizing the seizure of documents, including contracts, minutes, site logs, invoices, correspondence, memoranda, deeds, canceled checks, and bank statements. The validity of this warrant has not been contested.

The following morning, Palentchar and eight other New Jersey law enforcement officers, all petitioners here, exe-

cuted the warrant. The search lasted approximately eight hours. In their federal complaint, respondents allege that, in addition to seizing hundreds of documents, petitioners barricaded the sole exit from the premises, searched all departing vehicles, recorded the serial numbers on F & S machinery, detained in one room all persons on the premises at the time of the search until they produced identification, threatened to tear apart respondents' homes if the documents were not discovered, and engaged in a number of other unlawful activities. See Complaint in No. 84–5369 (D NJ), pp. 7–9, 10. The execution of the warrant gave rise to the federal litigation now before us.

Respondents' attorneys arrived while the search was in progress and challenged the adequacy under New Jersey law of the inventory procedure. To resolve the dispute, respondents' counsel and petitioner Deakins telephoned Judge Lenox, who ordered all seized materials sealed pending his assessment of the procedure. Ten days later, on October 15, 1984, New Jersey's Deputy Attorney General Julian Wilsey invited respondents' counsel to examine the documents under seal and to copy whatever documents respondents needed in order to continue the conduct of their business. General Wilsey also informed respondents' counsel that the State was prepared to return any documents discovered that exceeded the scope of the warrant. In the course of this examination, counsel identified numerous documents that they contended were either outside the scope of the warrant or protected by the attorney-client or attorney-work-product privilege. The State disagreed, and the disputed documents were resealed under the authority of Judge Lenox's original sealing order.

On December 27, while the documents were still under seal, respondents instituted this civil rights action under 42 U. S. C. § 1983 in the United States District Court for the District of New Jersey. Respondents sought equitable relief, including the return of all documents seized, and, as well, compensatory and punitive damages for the alleged vi-

olations of their rights under the Fourth, Fifth, Sixth, and Fourteenth Amendments, and attorney's fees. Respondents also asserted certain pendent state claims for trespass, conversion, unlawful confinement, and the intentional or reckless infliction of emotional distress. Prior to filing an answer, petitioners moved to dismiss the complaint, arguing that the existence of an ongoing state grand jury investigation required the federal court to abstain from adjudicating disputes arising out of that investigation. Respondents countered with a motion for a preliminary injunction directing the return of the documents.

While all this was taking place in federal court, Judge Lenox, at the State's behest, entered an *ex parte* order directing respondents to show cause why he should not lift the seal and make the documents available to the state officials conducting the grand jury investigation. Three days before the scheduled hearing on that order to show cause, the District Court issued a temporary restraining order staying discovery in the federal action and directing the State not to lift the seal before the District Court disposed of the motions pending before it. Several months later, on August 6, 1985, the District Court granted petitioners' motion to dismiss on abstention grounds and denied respondents' motion for a preliminary injunction. App. to Pet. for Cert. 5a.

On appeal, the Court of Appeals for the Third Circuit affirmed the District Court's denial of the preliminary injunction but reversed the judgment dismissing the complaint. 798 F. 2d 632 (1986). A divided panel ruled that the abstention doctrine pronounced in *Younger* v. *Harris*, 401 U. S. 37 (1971), and its progeny did not require the District Court to abstain from adjudicating respondents' claims for injunctive relief arising out of the ongoing state grand jury investigation. The panel was unanimous, however, in reversing the District Court's dismissal of respondents' claims for money damages and attorney's fees. Relying on Circuit precedent, the Court of Appeals held that, even when abstaining en-

tirely from the adjudication of equitable claims, a district court was required to stay rather than to dismiss federal claims that were not cognizable in the state forum in which the companion equitable claims were being adjudicated. 798 F. 2d, at 635–636, citing *Crane* v. *Fauver*, 762 F. 2d 325, 328–329 (CA3 1985); *Williams* v. *Red Bank Bd. of Ed.*, 662 F. 2d 1008, 1022–1024 (CA3 1981). The Court of Appeals noted that the availability of a separate state forum in which the monetary claims could be brought did nothing to lessen the District Court's obligation to retain jurisdiction over the claims properly before it. 798 F. 2d, at 635–636. The court remanded the case for further proceedings.

After the Court of Appeals rendered its judgment, the state grand jury returned an indictment against three of the respondents—Monaghan, DeSantis, and F & S—and against others not parties to the present federal action.[1] None of the seized documents had ever been submitted to the indicting grand jury, and the contested documents were still under seal at the time the indictment was returned. The Superior Court of New Jersey, Law Division, Cumberland County, to which the indictment was assigned for trial, took jurisdiction over respondents' equitable claims for the return of the seized documents. See Memorandum for Respondents Suggesting that Cause is Moot 3. The Superior Court has since held that certain documents were seized in violation of the attorney-client privilege and has ordered their return. See Tr. of Oral Arg. 22–23. Still pending before that court are motions seeking the return of other documents seized. See *id.*, at 23. In light of these developments, all six respondents represent, through common counsel, that they do not

---

[1] This fact is not reflected in the record but the parties have informed the Court in their briefs, in their memoranda as to mootness, and at oral argument, that the indictment had been returned. See Brief for Petitioners 18; Brief for Respondents 17; Memorandum for Respondents Suggesting that Cause is Moot 3; Memorandum for Petitioners in Opposition to Suggestion 2; Tr. of Oral Arg. 6–7 and 22.

wish to pursue their claims for equitable relief in federal court. *Id.*, at 22–25. They wish to withdraw these claims from their federal complaint and seek injunctive relief exclusively in the state proceedings initiated by the indictment. Respondents also represent that, if the complaint were remanded to the District Court, they would seek a stay of all federal proceedings on the damages claims pending resolution of the state proceedings. *Id.*, at 22, 25; Memorandum for Respondents Suggesting that Cause is Moot 4.

## II

Article III of the Constitution limits federal courts to the adjudication of actual, ongoing controversies between litigants. *Preiser* v. *Newkirk*, 422 U. S. 395, 401 (1975); *SEC* v. *Medical Committee for Human Rights*, 404 U. S. 403, 407 (1972). It is not enough that a controversy existed at the time the complaint was filed, and continued to exist when review was obtained in the Court of Appeals. *Sosna* v. *Iowa*, 419 U. S. 393, 402 (1975); *Steffel* v. *Thompson*, 415 U. S. 452, 459, n. 10 (1974). In the case now before us, respondents state that they no longer seek any equitable relief in federal court.[2] Because there no longer is a live controversy between the parties over whether a federal court can hear respondents' equitable claims, the first question on which certiorari was granted is moot.[3]

Petitioners, however, object that respondents' promise to amend their complaint is an empty one, because nothing will prevent respondents, particularly those not indicted, from nullifying that amendment by further amendment or from filing a new complaint if they are dissatisfied with the relief obtained in the state criminal proceeding. Petitioners also ex-

---

[2] See Memorandum for Respondents Suggesting that Cause is Moot 3; Brief for Respondents 18; Tr. of Oral Arg. 22, 24–25.

[3] This Court rejected respondents' suggestion of mootness filed before argument. 482 U. S. 912 (1987). Representations of counsel in response to inquiries at oral argument now have persuaded us that the suggestion is sound as to the first question presented.

press concern that respondents will raise only some of their equitable claims in the state proceeding, thus preserving the option of pursuing the remaining claims in federal court. If respondents return to federal court while the grand jury investigation is still in progress, petitioners argue, the District Court would be bound by the decision of the Court of Appeals in this case and would refuse to abstain. To prevail on the abstention question, petitioners would then have to appeal to the very court that already had decided the question against them and ultimately petition successfully again for certiorari. Even then, petitioners suggest, respondents could use the same ploy once more to deprive this Court of jurisdiction. According to petitioners, this potential for manipulation renders the case "capable of repetition, yet evading review," and should therefore shield it from a conclusion of mootness. See *Murphy* v. *Hunt*, 455 U. S. 478, 482 (1982).

Petitioners misconceive the effect respondents' representations and our reliance thereon will have on the shape of the federal litigation. When a claim is rendered moot while awaiting review by this Court, the judgment below should be vacated with directions to the District Court to dismiss the relevant portion of the complaint. See *United States* v. *Munsingwear, Inc.*, 340 U. S. 36, 39–40 (1950). This disposition strips the decision below of its binding effect. And respondents can be prevented from reviving their claims by the order of dismissal. Because this case was rendered moot in part by respondents' willingness permanently to withdraw their equitable claims from their federal action, a dismissal with prejudice is indicated. This will prevent the regeneration of the controversy by a reassertion of a right to litigate the equitable claims in federal court.[4] Relying upon the

---

[4] The Court's ability to prevent respondents from renewing their claims after they are dismissed as moot distinguishes this case from one in which a *defendant* attempts to avoid appellate review by voluntarily ceasing the challenged conduct without losing the ability to reinitiate the conduct once the mooted case is dismissed. In the latter circumstance this Court has

representations of respondents' counsel at oral argument that all six respondents have no continuing interest in the federal adjudication of their claims for equitable relief, the equitable claims of all respondents should be dismissed with prejudice. Respondents therefore will be barred from reviving in federal court their equitable claims against petitioners arising out of the events surrounding the execution of the search warrant.[5]

## III

Our conclusion that the issue concerning respondents' equitable claims is now moot does not prevent our consideration of the propriety of the District Court's dismissal of respondents' claims for monetary relief. See *University of Texas* v. *Camenisch*, 451 U. S. 390, 393 (1981); *Powell* v. *McCormack*, 395 U. S. 486, 495–500 (1969). Respondents continue to press their claims for damages and attorney's fees. They state, however, that they will seek a stay of federal proceed-

---

ruled that "[m]ere voluntary cessation of allegedly illegal conduct does not moot a case; if it did, the courts would be compelled to leave '[t]he defendant . . . free to return to his old ways.'" *United States* v. *Concentrated Phosphate Export Assn., Inc.*, 393 U. S. 199, 203 (1968), quoting *United States* v. *W. T. Grant Co.*, 345 U. S. 629, 632 (1953). In this case, the "conduct" that petitioners fear will be resumed is the pursuit of the federal litigation for equitable relief. Once that litigation is dismissed with prejudice, it cannot be resumed in this or any subsequent action. To reinitiate the abstention dispute between these parties, respondents would have to allege new equitable claims, presumably arising out of other events. The threat to petitioners, based on the mere "speculative contingenc[y]," *Hall* v. *Beals*, 396 U. S. 45, 49 (1969), that respondents will assert new federal claims for equitable relief against the same New Jersey law enforcement agents cannot be said to be "sufficiently real and immediate to show an existing controversy." *O'Shea* v. *Littleton*, 414 U. S. 488, 496 (1974).

[5] This, of course, is not to say that respondents would be prevented from asserting a right to present claims against these petitioners for equitable relief in federal court should the disputed conduct be repeated. The Court recognized in *United States* v. *Munsingwear, Inc.*, 340 U. S. 36, 40 (1950), that the vacation and dismissal of the complaint that has become moot "clears the path for future relitigation of the issues between the parties," should subsequent events rekindle their controversy.

ings on these claims pending resolution of the state proceeding. Tr. of Oral Arg. 25; Memorandum for Respondents Suggesting that Cause is Moot 4.

Petitioners argue that the *Younger* doctrine—which requires a federal court to abstain where a plaintiff's federal claims could be adjudicated in a pending state judicial proceeding—applies to complaints seeking only monetary relief. Petitioners further argue that it is within the District Court's discretion to dismiss rather than stay a federal complaint for damages and fees where abstention is required. We need not decide the extent to which the *Younger* doctrine applies to a federal action seeking only monetary relief, however, because even if the *Younger* doctrine requires abstention here, the District Court has no discretion to dismiss rather than to stay claims for monetary relief that cannot be redressed in the state proceeding.[6]

In reversing the District Court's dismissal of the claims for damages and attorney's fees, the Court of Appeals applied the Third Circuit rule that requires a District Court to stay rather than dismiss claims that are not cognizable in the parallel state proceeding. 798 F. 2d, at 635, citing *Crane* v. *Fauver*, 762 F. 2d 325 (1985), and *Williams* v. *Red Bank Bd. of Ed.*, 662 F. 2d 1008 (1981). The Third Circuit rule is sound. It allows a parallel state proceeding to go forward without interference from its federal sibling, while enforcing the duty of federal courts "to assume jurisdiction where juris-

---

[6] In his concurring opinion in this case, JUSTICE WHITE urges that we reach the question—not considered at any stage below, and not the subject of our grant of certiorari—whether the *Younger* doctrine applies to cases in which only money damages are sought in the federal forum. Apparently, JUSTICE WHITE also finds it appropriate to conclude that *Younger* requires abstention in this particular case, although he does not analyze this question separately. Because all respondents have represented that they will seek a stay of their damages claims on remand, we see no reason to reach issues so awkwardly presented for review.

diction properly exists."[7]  *Id.*, at 1024.  This Court repeatedly has stated that the federal courts have a "virtually unflagging obligation" to exercise their jurisdiction except in those extraordinary circumstances "'where the order to the parties to repair to the State court would clearly serve an important countervailing interest.'"  *Colorado River Water Conservation Dist.* v. *United States,* 424 U. S. 800, 813, 817 (1976), quoting *County of Allegheny* v. *Frank Mashuda Co.,* 360 U. S. 185, 188–189 (1959); see also *Moses H. Cone Memorial Hospital* v. *Mercury Construction Corp.,* 460 U. S. 1, 14–15 (1983).

We are unpersuaded by petitioners' suggestion that this case presents such extraordinary circumstances.  First, petitioners' speculation that the District Court, if allowed to retain jurisdiction, would "hover" about the state proceeding, ready to lift the stay whenever it concluded that things were proceeding unsatisfactorily, is groundless.  Petitioners seem to assume that the District Court would not hold up its end of the comity bargain—an assumption as inappropriate as the converse assumption that the States cannot be trusted to enforce federal rights with adequate diligence.  See *Stone* v. *Powell,* 428 U. S. 465, 493–494, n. 35 (1976).

Second, petitioners' contention that *Pennhurst State School and Hospital* v. *Halderman,* 465 U. S. 89 (1984), prevents the District Court from adjudicating respondents' claims under state law does not argue for the dismissal of all of respondents' damages claims, state and federal.  Petitioners seem to suggest that the state-law claims predominate in the complaint, and the federal claims are minimal additions not substantial enough to require the District Court to exercise its jurisdiction.  Saying nothing about the applicability of *Penn-*

---

[7] In both *Crane* v. *Fauver,* 762 F. 2d, at 329, and *Williams* v. *Red Bank Bd. of Ed.,* 662 F. 2d, at 1024, n. 16, the Court of Appeals recognized that unless it retained jurisdiction during the pendency of the state proceeding, a plaintiff could be barred permanently from asserting his claims in the federal forum by the running of the applicable statute of limitations.

*hurst* to the particular state-law claims alleged in respondents' complaint, we note that a sizable portion of the relief sought in the federal complaint is intended to compensate respondents for injuries allegedly sustained in violation of federal constitutional rights. There can be no question that respondents have alleged injuries under federal law sufficient to justify the District Court's retention of jurisdiction. When the federal proceeding recommences in the District Court, petitioners will be free to argue that the state claims should be dismissed under *Pennhurst.*

Finally, petitioners argue that allowing the District Court to dismiss the complaint will prevent the piecemeal litigation of the dispute between the parties. But the involvement of the federal courts cannot be blamed for the fragmentary nature of the proceedings in this litigation. Because the state criminal proceeding can provide only equitable relief, any action for damages would necessarily be separate. Indeed, the state forum in which petitioners invite respondents to pursue their claims for monetary relief clearly would require the initiation of a separate action. See Brief for Petitioners 32. Piecemeal litigation of the issues involved in this case is thus inevitable.

In sum, none of the circumstances cited by petitioners to justify the District Court's dismissal of respondents' claims for damages and attorney's fees constitutes the kind of extraordinary circumstance that we have held may justify abdication of the "virtually unflagging obligation . . . to exercise the jurisdiction given" the federal courts. *Colorado River Water Conservation Dist.* v. *United States,* 424 U. S., at 817.

## IV

Because respondents' claims for equitable relief are moot, we vacate the portion of the Court of Appeals' judgment addressing those claims and remand with instructions to dismiss the claims for equitable relief with prejudice. We affirm the portion of the Court of Appeals' judgment reversing

the District Court's dismissal of respondents' claims for monetary relief and attorney's fees.

*It is so ordered.*

JUSTICE WHITE, with whom JUSTICE O'CONNOR joins, concurring.

Respondents, targets of a state grand jury investigation, filed this § 1983 suit, alleging, *inter alia*, that petitioners had violated their federal constitutional rights in the execution of a search warrant and three grand jury subpoenas. The federal action sought damages as well as an order for the return of the seized property. Relying on *Younger* v. *Harris*, 401 U. S. 37 (1971), the District Court dismissed both the equitable and the damages claims. The Court of Appeals reversed. It held, first, that even if there was a need for abstention on respondents' claims for equitable relief, the District Court erred in dismissing the damages phase of the case, at least when that remedy may not be had in pending state proceedings. 798 F. 2d 632, 635 (CA3 1986). Second, the Court of Appeals held that a state grand jury investigation is not the kind of proceeding that calls for abstention under *Younger*. 798 F. 2d, at 636–638. We granted certiorari on both questions. 479 U. S. 1063 (1987).

I agree with the Court that the issue of *Younger*'s applicability to state grand jury proceedings is moot, and that the judgments of the Court of Appeals and the District Court must be vacated insofar as they dealt with that question. I concur in the Court's judgment that, because respondents are no longer seeking equitable relief in this action, the grand jury question is no longer properly before us. *Ante*, at 200–201. It is worth noting, however, that the reason respondents give for withdrawing their injunctive claim is that the return of an indictment against three of them has now created a state criminal proceeding in which their federal constitutional claims may be adjudicated. It is thus not surprising that respondents no longer seek a federal court injunction: had they not withdrawn their request or conceded that the indictments

mooted their injunctive claim, it is likely that we would have vacated the Court of Appeals' judgment and remanded in light of the intervening indictments.

The mooting of the claim for injunctive relief leaves the question whether the Court of Appeals was correct in reversing the District Court's dismissal of the damages claim. I agree with the Court that it was. To permit dismissal of a claim for damages when such relief may not be obtained in any pending state proceeding is surely not required by any notions of comity. Moreover, dismissal might foreclose, on statute of limitations grounds, the subsequent pursuit of a damages action in federal court in the event that the state court holds that a violation of constitutional rights took place. No doubt this is why Courts of Appeals which have applied *Younger* to damages actions have ordered stays, and not dismissals, of damages claims to which *Younger* applies.[1]

My difficulty with the Court's opinion is that, while approving the Court of Appeals' decision to stay and not dismiss the damages claim, it does not adequately explain why the federal courts must or may stay, rather than proceed to adjudicate, the federal constitutional claims for damages. After all, the Court's opinion cites the "virtually unflagging obligation" of the federal courts to adjudicate claims within their jurisdiction absent extraordinary circumstances, as we recognized in *Colorado River Water Conservation Dist.* v. *United States*, 424 U. S. 800 (1976). Why, then, stay the § 1983 damages claim asserting a violation of federal constitutional rights? Why does not the District Court's "unflagging obligation" require it to proceed on that claim?

In sanctioning this decision to stay, the Court recites the rule of the Third Circuit that when there is abstention on an equitable claim because of a pending state proceeding, the

---

[1] See, *e. g.*, *McCurry* v. *Allen*, 606 F. 2d 795, 799 (CA8 1979), rev'd on other grounds, 449 U. S. 90 (1980); *Doby* v. *Strength*, 758 F. 2d 1405, 1406 (CA11 1985).

damages claim should be stayed and not dismissed. *Ante*, at 202–203, citing *Crane* v. *Fauver*, 762 F. 2d 325 (CA3 1985), and *Williams* v. *Red Bank Bd. of Ed.*, 662 F. 2d 1008 (CA3 1981).[2] The Third Circuit rule, which the Court endorses, appears to rest on "prudential considerations" and not on the view that *Younger* requires that a damages action be stayed when there is a parallel state criminal (or "quasi-criminal") proceeding underway. See, *e. g.*, *Crane* v. *Fauver*, *supra*, at 329. But we have never held that in all cases where there are parallel state and federal proceedings involving a federal constitutional issue, the federal court should hold its hand and allow the state court to proceed first.

To affirm the Court of Appeals' judgment ordering a stay requires a more substantial basis than "prudential consideration," and that basis is not difficult to find: it is that *Younger* requires, not only dismissal of the equitable claim in this case, but also that the damages action not go forward. Several times before this Court has declined to state that *Younger* applies to damages actions. *E. g.*, *Tower* v.

---

[2] The Court also appears to rest its decision upon respondents' assurance that they will seek a stay of their federal damages action on remand, holding their claims in abeyance until the conclusion of the state criminal proceedings. *Ante*, at 201–202. There is a distinct difference, however, between the weight the Court should give this assurance, and the weight the Court properly accords to the representations which respondents made concerning the mootness of their equitable-relief claims.

With respect to the latter, the Court's reliance on respondents' disclaimer of any interest in equitable relief has resulted in a dismissal of these claims as moot. This dismissal, with prejudice, effectively prevents a reversal of position on the part of respondents. However, there is nothing in the Court's decision today that bars respondents from changing their views on seeking a stay of their damages claim. Such an altered litigation posture may come out of a good- or bad-faith change of heart, and may lead respondents to request an immediate adjudication of their damages claims. Unfortunately, for the reasons discussed above, the Court's opinion does not adequately address why the District Court must not accommodate such a renewed request.

*Glover,* 467 U. S. 914, 923 (1984); *Juidice* v. *Vail,* 430 U. S. 327, 339, n. 16 (1977). In the absence of direction from this Court, it now appears that a plurality of the Circuits apply the *Younger* doctrine—in some fashion—to damages claims like respondents'.[3]

The reasons for such an approach are obvious. As the *Younger* decision itself recognized, it has long been the rule that the federal courts should not interfere with or pre-empt the progress of state criminal proceedings. *Younger* v. *Harris,* 401 U. S., at 43–44, 53–54. A judgment in the federal damages action may decide several questions at issue in the state criminal proceeding. It may determine, for example, that certain evidence was seized contrary to the Fourth Amendment, or that an interrogation was conducted in violation of the Sixth Amendment, or that Fifth Amendment rights were somehow violated. In fact, in this case, such claims—and many more—are all being pressed by respondents in their § 1983 damages action. If the claims the Court remands today were disposed of on the merits by the District Court, this decision would presumably be owed res judicata effect in the forthcoming state criminal trial of respondents. "[T]he potential for federal-state friction is obvious." *Guerro* v. *Mulhearn,* 498 F. 2d 1249, 1253 (CA1 1974).[4]

---

[3] See *Landrigan* v. *Warwick,* 628 F. 2d 736, 743 (CA1 1980); *McCurry* v. *Allen, supra,* at 799; *Mann* v. *Jett,* 781 F. 2d 1448, 1449 (CA9 1986); *Parkhurst* v. *State,* 641 F. 2d 775, 777 (CA10 1981); *Doby* v. *Strength, supra,* at 1406.

Some courts have taken a more ambiguous position, akin to the Third Circuit cases discussed *supra.* See, *e. g., Suggs* v. *Brannon,* 804 F. 2d 274, 279 (CA4 1986); *Giulini* v. *Blessing,* 654 F. 2d 189, 193 (CA2 1981); *Singleton* v. *New York City,* 632 F. 2d 185, 190 (CA2 1980).

By contrast, the Fifth and Sixth Circuits both hold that *Younger* has no applicability to a claim for damages, see *Thomas* v. *Texas State Bd. of Medical Examiners,* 807 F. 2d 453, 457 (CA5 1987); *Carras* v. *Williams,* 807 F. 2d 1286, 1291–1292 (CA6 1986), although the Sixth Circuit's rule on this point appears to be "flexible," see *id.,* at 1292.

[4] It is not surprising that several Courts of Appeals, in considering whether or not *Younger* applies to claims for damages, have found that

It was for these same reasons that we held that a federal court should not entertain a declaratory judgment action aimed at adjudicating a federal issue involved in a state criminal proceeding. See *Samuels* v. *Mackell*, 401 U. S. 66, 72–73 (1971). As was true in *Samuels*, here, "the practical effect of the two forms of relief [here, damages and injunctions] will be virtually identical, and the basic policy against federal interference with pending state criminal prosecutions will be frustrated as much by a declaratory judgment [or, I believe, a damages award] as it would be by an injunction." See *id.*, at 73. Under *Samuels*, for example, if a state criminal prosecution is ongoing, a federal court cannot adjudicate a plaintiff's request for a declaration that evidence being used in that prosecution was seized contrary to the Fourth Amendment. Yet if *Younger* does not apply to damages claims, that same court in the same circumstances *could* rule the search unconstitutional as long as the federal plaintiff was seeking damages *in addition to* a determination of the unconstitutionality of the seizure—a prerequisite of any damages award. Why the latter action should be considered *less* problematic for purposes of comity or "Our Federalism" escapes me. If anything, I would have thought just the opposite would be true.

In light of the developments in this case and our decisions in *Younger* and *Samuels*, it is clear that the District Court should not dismiss the damages claims, yet must not proceed to judgment on them either. Consequently, I would couple our remand of this case with a holding that, pursuant to *Younger*, the lower courts *may not* adjudicate respondents'

---

many of the same considerations which suggest that a federal plaintiff should not be able to enjoin ongoing state criminal proceedings also militate against a damages award to a similarly situated federal plaintiff. See, *e. g.*, *Mann* v. *Jett*, *supra*, at 1449; *Parkhurst* v. *State*, *supra*, at 777; *Guerro* v. *Mulhearn*, 498 F. 2d, at 1251–1252.

damages claims until the conclusion of the pending state
criminal proceedings.[5]

---

[5] While three of the respondents have been indicted, three others have
not. See *ante*, at 198, and n. 1. Even if *Younger* does not apply to their
claims for damages, the District Court would be prudent, under *Colorado
River Water Conservation Dist.* v. *United States*, 424 U. S. 800 (1976), to
stay the adjudication of these claims—virtually indistinguishable from the
substance of the ongoing state criminal proceedings involving the other re-
spondents—as well.