James GOMEZ and Daniel Vasquez, Petitioners,

v.

The UNITED STATES DISTRICT COURT FOR the NORTHERN DISTRICT OF CALIFORNIA, Respondent.

David Fierro, Robert Harris, and Alejandro Gilbert Ruiz, Real Parties in Interest.

No. 92–70237.

United States Court of Appeals, Ninth Circuit.

Decided April 19, 1992.

Dissent Filed April 20, 1992.

Before: ALARCON, BRUNETTI, and NOONAN, Circuit Judges.

### ORDER

Judges Alarcon and Brunetti vote to grant the petition for a writ of mandate. The district court is directed to vacate the temporary restraining order issued on April 18, 1992, 790 F.Supp. 966, enjoining James Gomez and Daniel Vasquez from inflicting the punishment of death by the administration of lethal gas upon Robert Alton Harris, David Fierro, Alejandro Gilbert Ruiz, and any members of the purported class.

NOONAN, Circuit Judge, would deny the petition.

A decision will be filed shortly setting forth the reasoning of the court.

The writ of mandate shall issue immediately.

NOONAN, Circuit Judge, dissenting:

As the well-known dictum of Justice Holmes has put it, great cases generate hydraulic pressures. It is clear that in this case and in the related proceedings involving Robert Harris a sense of urgency has pervaded the litigation. Such urgency is understandable on the part of counsel for the state who are charged with making sure that Harris is executed; it is evident what they believe their primary duty to be. Such urgency, however, cannot be the priority of this court, whose task is to enforce the Constitution of the United States while observing the rules by which the federal judicial system functions and the rules by which we as a court are organized.

The issuance of a writ of mandamus by a two-to-one vote of the panel in this case at a late hour Sunday evening, April 19, 1992 raises a serious question as to compliance with our rules, appears to break with settled precedent as to the issuance of writs of mandamus, and makes likely an irreparable violation of the Constitution of the United States.

In haste, the court's order of mandamus was announced at approximately 11 P.M. on Sunday evening. The writ itself was transmitted by FAX to the district court at 11:23 A.M. Monday morning. The opinion supporting the writ was not produced until after 3 P.M. on Monday. Until the opinion was produced the order constituted "a mandamus from the blue without rationale." *See Will v. United States*, 389 U.S. 90, 107, 88 S.Ct. 269, 280, 19 L.Ed.2d 305 (1967). Such a mandamus from the blue is "tantamount to an abdication of the ... functions of an appellate court." *Id.* at 107, 88 S.Ct. at 280. It is a fair question whether the reasons now given provide the missing rationale.

1. *The jurisdiction of the panel.* A serious question exists as to whether the panel to which the Robert Harris case had been confided had jurisdiction to issue mandamus in this case. Circuit Rule 22–1 specifies:

**Rule 22–1  Scope of These Rules**

The following rules apply to all proceedings within the jurisdiction of this court in cases brought pursuant to 28 U.S.C. § 2254 involving a sentence of death, including appeals from orders of United States District Courts granting or denying habeas corpus relief, motions for stays of execution, or applications for certificates of probable cause. To the extent that other Circuit Rules are inconsistent with these rules, these rules apply.

**Rule 22–2  Habeas Corpus Death Penalty Panel**

... The panel to which the case is assigned shall handle all matters pertaining to the case, including motions for a stay of execution, applications for certificate of probable cause, the merits, appeals from second or successive petitions, remands from the Supreme Court of the United States, and all incidental and collateral matters, including any separate proceedings questioning the conviction or sentence.

The instant case, *Gomez and Vasquez v. U.S.D.C.*, was not brought pursuant to 28 U.S.C. § 2254. It is certainly arguable whether it is a "collateral matter" which "questions the sentence." Since authority of such moment has been assumed by the Harris panel, it is desirable for the full court to determine whether the Harris panel had jurisdiction.

On the assumption that the Harris panel did have jurisdiction, it seems apparent that the other rules governing "habeas corpus death penalty cases" should also apply, even though it is awkward to fit all of them within the framework of a civil rights case. In particular it is possible for a single judge to issue a stay of execution under Circuit Rule 22–5(e)(4).

2. *The Obligation of the District Court.* The opinion of the panel granting mandamus takes the position that the district court was clearly erroneous in exercising jurisdiction. This opinion takes no account of the general rule that a federal court has a "virtually unflagging" obligation to adjudicate claims within its jurisdiction, *Deakins v. Monaghan*, 484 U.S. 193, 203, 108 S.Ct. 523, 530, 98 L.Ed.2d 529 (1988) and that not to do so "would be

treason to the Constitution." *Cohens v. Virginia*, 6 Wheat. 264, 404, 5 L.Ed. 257 (1821) (per Marshall, C.J.). An exception to the general rule is an exception, not the rule. *New Orleans Public Serv. v. Council of New Orleans*, 491 U.S. 350, 359, 109 S.Ct. 2506, 2513, 105 L.Ed.2d 298 (1989). The panel has made an unprecedented extension of *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1972) in order to justify its extraordinary action and create an exception to what would otherwise be "treason to the Constitution." The panel has violated our rules governing the issue of mandamus, *Bauman v. United States*, 557 F.2d 650, 654–55 (9th Cir.1977).

3. *Disregard Of Precedent Re Mandamus.* The *Bauman* factors governing mandamus are well-established, 557 F.2d 650, 654 (1976). The central question is "whether the district court's order is clearly erroneous as a matter of law." Judge Patel, in the exercise of her discretion to issue a temporary restraining order, had to answer two questions: Were there serious questions presented? Did the balance of hardships tip in favor of the party seeking the order?

To answer the second question first, it is evident that the state has an interest in the orderly carrying out of an execution and suffers an inconvenience in its postponement. At the same time the injury is more psychological and intangible than substantial. The state will get its man in the end. In contrast, if persons are put to death in a manner that is determined to be cruel, they suffer injury that can never be undone, and the Constitution suffers an injury that can never be repaired. The balance of hardships clearly tips in favor of the restraining order.

The serious questions presented to Judge Patel were three:

1. Do *Younger v. Harris*, 401 U.S. 37, 45, 91 S.Ct. 746, 751, 27 L.Ed.2d 669 and its progeny require the federal court to abstain from intervening to prevent the execution of a state judgment?

The answer to this question is disputed by the parties. Although *Younger* itself dealt only with a pending criminal prosecution, it is argued that the doctrine has been extended so that a federal court should not prevent the carrying out of a state judgment. *Pennzoil v. Texaco*, 481 U.S. 1, 17, 107 S.Ct. 1519, 1529, 95 L.Ed.2d 1 (1987). On the other hand, it is argued that *Younger* abstention has no place in this kind of case. *Younger* itself applies where the constitutional defense could be raised during the ongoing state proceeding. *Almodovar v. Reiner*, 832 F.2d 1138, 1141–42 (9th Cir.1987). *Pennzoil* explicitly applies to a case where the state judicial process is still going on—in that case where an appeal to the state appellate court was pending. *Pennzoil*, 481 U.S. 1 at 14, n. 13, 107 S.Ct. 1519 at 1527, n. 13 ("So long as these challenges relate to pending state proceedings, proper respect for the ability of the state courts to resolve federal questions presented in state-court litigation mandates that the federal court stay its hand." *Id.* at 14, 107 S.Ct. at 1527).

Taken at its word, the panel's reading of *Younger*, interpreting judicial proceedings to last through execution, precludes all habeas corpus petitions by death penalty inmates. From the beginning of the prosecution until the moment of death there is no time that *Younger* would permit a habeas petition.

2. Should the section 1983 action, so far as it affected Robert Harris, be construed as an impermissible evasion of the ordinary requirements for habeas corpus?

In a sense this question is a recasting of the first question but focuses directly on the impact of a TRO on Harris' execution. The State urged that, looking at the realities of the matter, this case was brought only to prevent Harris' execution. In opposition, the plaintiffs asserted that they represented a large group of persons who would be subjected to death by lethal gas and that Harris was one of this number. It would surely be anomalous for the class to have a good cause of action and to have one member of it denied the benefit of the action because relief would come too late in the absence of the restraining order. It was a serious question whether such an anomaly should be permitted.

The general rule is clear that a section 1983 claim cannot be blocked by imposing

the exhaustion of state remedy requirement that would be appropriate to habeas relief. *Ellis v. Dyson,* 421 U.S. 426, 432–33, 95 S.Ct. 1691, 1694–95, 44 L.Ed.2d 274 (1975); *Young v. Kenny,* 907 F.2d 874, 875 (9th Cir.1990). The panel's opinion seems not to acknowledge this rule. Consequently, the panel seems unaware of the serious question that the district court would have to decide if it were to turn this section 1983 action into a habeas petition for Harris and bar it for lack of exhaustion. *Wilwording v. Swenson,* 404 U.S. 249, 251, 92 S.Ct. 407, 409, 30 L.Ed.2d 418 (1971), *Preiser v. Rodriguez,* 411 U.S. 475, 482, 93 S.Ct. 1827, 1832, 36 L.Ed.2d 439 (1973).

Finally, in suggesting that Harris's Eighth Amendment claim regarding the mode of his execution is only cognizable under habeas corpus, the panel creates a circuit split. No other circuit has so held. Both the Fifth and Eleventh Circuit have considered challenges to the manner of execution as properly raised under section 1983. *Sullivan v. Dugger,* 721 F.2d 719 (11th Cir.1983), *Byrne v. Roemer,* 847 F.2d 1130 (5th Cir.1988).

3. Is it cruel and unusual punishment to inflict death by lethal gas? In determining whether this is a serious question the court was governed by the following precedents:

(a) As to what constitutes cruel and unusual punishment, it was long ago decided that the standard is not set by what the prevailing norm was in 1789, but rather by an evolving adaptation to new evils. *Weems v. United States,* 217 U.S. 349, 373, 30 S.Ct. 544, 551, 54 L.Ed. 793 (1909). The standard *Weems* approved has been repeatedly invoked to permit the application of "evolving standards of decency," *e.g., Stanford v. Kentucky,* 492 U.S. 361, 369, 109 S.Ct. 2969, 2974, 106 L.Ed.2d 306 (1989), *quoting TROP v. Dulles,* 356 U.S. 86, 101, 78 S.Ct. 590, 598, 2 L.Ed.2d 630 (1958) (plurality opinion).

In determining what is the current standard of human decency in these matters, the indicia should be objective, and the best index is the practice of the state legislatures. *Stanford,* 492 U.S. at 370–371, 109 S.Ct. at 2975–2976.

Only three states now authorize death only by means of lethal gas. One of these states, Maryland, has not had an execution since 1961. The second state, Arizona, had such an execution this month, and it was reported to the district court that, in reaction to it, the state legislature was taking steps to change the method of execution. The third state is California, whose statute is in question in this case. Eight states in the last 15 years have abolished execution by lethal gas. A serious question exists as to whether there is not sufficient consensus to establish that its use is cruel and unusual punishment.

(b) The constitutional standard is that any unnecessary suffering caused in the infliction of the death penalty is cruel and unusual. *Louisiana ex rel. Francis v. Resweber,* 329 U.S. 459, 463, 67 S.Ct. 374, 376, 91 L.Ed. 422 (1947). The district court was presented with substantial medical evidence in the form of declarations that such unnecessary suffering was inflicted. The State did not choose to respond to this evidence. Clearly a serious question was presented as to whether unnecessary suffering was inflicted.

I respectfully dissent.