**McTECH CORPORATION, Plaintiff,**

v.

**UNITED STATES, Defendant.**

No. 12–122C.

United States Court of Federal Claims.

Filed: July 10, 2012.

Reissued: July 16, 2012.

Hilary S. Cairnie, Baker Hostetler LLP, Washington, D.C., for plaintiff. With him at the hearings were Christopher Noon, Trevor Stanley, and Udyogi Hangawatte, Baker Hostetler LLP, Washington, D.C.

Kenneth S. Kessler, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for defendant. With him on the briefs were Stuart F. Delery, Acting Assistant Attorney General, Civil Division, and Jeanne E. Davidson, Director, and Kenneth M. Dintzer, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C.

## OPINION AND ORDER [1]

LETTOW, Judge.

As initially filed, this pre-award bid protest challenged actions taken to remove the protestor, McTECH Corporation ("McTECH"), from a competition for a contract to build a conference center and dormitories at the Customs and Border Protection's Advanced Training Center ("the training buildings") in Harpers Ferry, West Virginia. McTECH was an incumbent contractor for other construction work at the Center, but it had been eliminated from the procurement competition on the ground that a potential conflict of interest existed based on a relationship with the entity that had designed the training buildings. McTECH was unsuccessful in contesting that elimination before the Government Accountability Office ("GAO"), after which McTECH filed its protest complaint in this court. Subsequent to the filing of the administrative record and McTECH's motion for judgment on the record, the procuring authority decided to rescind McTECH's disqualification and restore McTECH to the competition for the contractual award. Based upon this corrective action, the government contends that McTECH's protest is moot and should be dismissed. McTECH, however, has filed a supplemental complaint challenging the corrective action as unreasonable and insufficient. This pre-award

1. Because this opinion and order might have contained confidential or proprietary information within the meaning of Rule 26(c)(1)(G) of the Rules of the Court of Federal Claims ("RCFC"), it was initially filed under seal. The parties were requested to review this decision and to provide proposed redactions of any confidential or proprietary information on or before July 16, 2012. The single redaction is shown by asterisks enclosed by brackets, "[* * *]."

protest consequently has devolved into a dispute over whether McTECH can mount a protest over the government's corrective action at this inchoate stage of the procurement.

## BACKGROUND [2]

### A. *The Procurement*

Acting on behalf of the Department of Homeland Security's Bureau of Customs and Border Protection, the Fort Worth District Office of the United States Army Corps of Engineers ("the Corps") on August 29, 2011 issued Request for Proposals No. W9126G–11–R–0128 ("the solicitation"), seeking offers to construct training buildings. AR 3–86 to – 4727; *see* AR 3–87, –94.[3] McTECH and a number of other offerors responded to the solicitation.

On September 27, 2011, the contract specialist assigned to the solicitation received an anonymous telephone call in which the caller asserted that McTECH had a close relationship to the designer of the training buildings, BrooAlexa Design Joint Venture, LLC ("BrooAlexa Design J.V."). AR 13–5159 (Contracting Officer's Determination and Findings (Dec. 1, 2011)). A search of the Central Contractor Registration database indicated that McTECH and BrooAlexa, LLC ("BrooAlexa LLC") had entered into six joint ventures. *Id.* The Contracting Officer wrote to McTECH, identifying the joint venture agreements and inquiring about a potential organizational conflict of interest ("OCI"). AR 21–5310 (Letter from Linda Eadie to McTECH (Sept. 29, 2011)). A day or so later, the agency received an e-mail from one of the prospective offerors, reporting that it had received an anonymous packet of information about McTECH and BrooAlexa LLC. AR 13–5159. McTECH responded to the

Contracting Officer denying the existence of an OCI and stating that it had never done work with BrooAlexa Design J.V. AR 13–5160. McTECH acknowledged that it had entered into a mentor-protégé agreement with BrooAlexa LLC. *Id.* On October 25, 2011, the Contracting Officer drew upon state corporate and registration documents to conclude that BrooAlexa Design J.V. and BrooAlexa LLC shared the same offices and manager, that either an actual or potential OCI existed, and that McTECH accordingly was disqualified from the competition for the contract to construct the training buildings. AR 13–5162 to –5163.

### B. *The GAO Protest*

McTECH promptly filed a pre-award protest with GAO, contesting the disqualification and averring that no non-public information was passed between McTECH and either BrooAlexa entity. AR 31–5643 (*McTECH Corp.*, B–406100, B–406100.02, 2012 CPD ¶ 97, at 5, 2012 WL 696526, at *3 (Comp.Gen. Feb. 8, 2012)). GAO also received and considered post-disqualification information submitted by McTECH, by the agency via an agency report and supplemental report, and by testimony from the Contracting Officer and others at a two-day hearing. *See, e.g.,* AR 13–5158 to –5163 (Contracting Officer's Determination and Findings); AR 17–5196 to –5209 (agency's exhibits to Contracting Officer's Determination and Findings); AR 27–5370 to –5521 (hearing testimony); AR 28–5522 to –5567 (hearing testimony).

Based upon these evidentiary materials, both those antedating and postdating the Contracting Officer's decision to disqualify McTECH, GAO "f[ound] reasonable the C[ontracting ]O[fficer]'s determination that Mc[TECH]'s close relationship to the designer of the construction project here created the appearance of an unfair advantage that

---

2. The recitations that follow are taken both from the plaintiff's pleadings and attachments to the pleadings and from the administrative record of the procurement filed by the government. No question has arisen respecting the authenticity of any of the pertinent documentary materials.

3. Citations to "AR ————" are to the administrative record filed with the court on March 13, 2012 in accord with RCFC 52.1(a). The number before the hyphen refers to a particular tab, and

the number after the hyphen denotes a specific page of the administrative record, *e.g.,* "AR 3–86." The pages of the administrative record are paginated sequentially without regard to the tabs.

Tab 3 constitutes the solicitation and includes detailed drawings, plans, and specifications for the construction of the buildings. As a result, that tab alone consists of more than 4,500 pages of materials.

could compromise the integrity of the procurement process." AR 31–5646 (*McTECH Corp.*, 2012 CPD ¶ 97, at 8, 2012 WL 696526, at *6). GAO accordingly denied McTECH's protest. *Id.*

### C. *The Instant Protest and the Corps' Corrective Action*

McTECH then filed a protest with this court, challenging anew the Contracting Officer's disqualification. After the administrative record was filed, McTECH submitted a motion for judgment on that record, along with a motion to supplement the record with copies of three nondisclosure agreements signed by officials of BrooAlexa Design J.V. Pl.'s Mot. to Supplement the Admin. Record, Attach. 1, Apr. 2, 2012, ECF No. 21–3. Those non-disclosure agreements had been executed on a form that was appended to the design contract as a required item. *See* AR 32–5667 (Design Contract ¶ H.2.B ("The Contractor shall not use, disclose, reproduce, or otherwise divulge or transfuse to any persons any technical information or data licensed for use by the Government that bears any type of restrictive or proprietary legend except as may be necessary in the performance of the contract. Refer to the Rights in Data clause for additional information.")); AR 33–5770, –5820 (Design Contract, Modification P00002, § J, Attach. 4 (Department of Homeland Security Non–Disclosure Agreement, DHS Form 11000–6)); AR 33–5807 (Design Contract, Modification P00002, Statement of Work (First Revision) ¶ 10.1 ("All cost estimates and/or design documents are considered privileged information and are for official use only. The A[rchitect]/E[ngineer] shall not divulge the cost information and/or design documents to anyone outside C[ustoms and ]B[order ]P[rotection] unless authorized by the Contracting Officer in writing.")). McTECH also averred that none of its joint ventures with BrooAlexa LLC was awarded any contract work and none of the joint ventures had become operational. Pl.'s Mem. in Support of Appl. for Temporary Restraining Order & Mot. for Prelim. Inj. at 14 & Attach. 3, Feb. 22, 2012, ECF No. 5. McTECH complained that the Contracting Officer had not "inquir[ed] as to whether there was any substance to th[e] C[entral ]C[ontractor] R[egistration] [joint ven-

ture] registrations" but rather had relied only on a "facial appearance" of a relationship. *Id.* at 14.

The government responded to McTECH's motion to supplement the administrative record by contending that the non-disclosure agreements signed by officials of BrooAlexa Design J.V. were never considered by the Contracting Officer in making her disqualification determination. Def.'s Opp'n to Pl.'s Mot. to Supplement the Admin. Record at 3. The government also sought and obtained an extension of time to respond to McTECH's motion for judgment on the administrative record. Order of April 23, 2012, ECF No. 28. On the day before the government's response was due, it gave notice of its intent to take corrective action by restoring McTECH to the competition. *See* Def.'s Notice of Corrective Action, Apr. 24, 2012, ECF No. 31. On the next day, April 25, 2012, the Contracting Officer sent McTECH a letter advising that she had withdrawn her disqualification. *See* Pl.'s Mot. for Leave to File Am. Compl. Ex. 1 Attach. 1 (Letter from Linda Eadie to McTECH (April 25, 2012)), May 7, 2012, ECF No. 34–1. The Contracting Officer also sent all prospective offerors a memorandum on May 4, 2012, asking them to respond to questions asking whether their firms had any business arrangements with BrooAlexa Design J.V. or BrooAlexa LLC. *Id.* Attach. 2 (Mem. from Linda Eadie to Prospective Offerors (May 4, 2012)).

McTECH persevered in its protest, claiming that the corrective action was inadequate because the Contracting Officer asked offerors only about relationships with BrooAlexa Design J.V. and BrooAlexa LLC and ignored other firms that had participated in the design process, and because the Corps had left the same allegedly biased and dysfunctional procurement evaluation team in place. *See* Pl.'s Appl. for Temporary Restraining Order & Mot. for Prelim. Inj., May 7, 2012, ECF No. 35. McTECH requested that the government be barred from acting further to evaluate offers, or proceeding with the corrective action, or using the same source selection team, *id.* at 2, pending compliance with the Competition in Contracting Act of 1989, codified in relevant part in sections of

10 U.S.C., and 48 C.F.R. Subpart 9.5, relating to a procurement authority's responsibilities to address organizational conflicts of interest, *id.* at 1.[4]

On May 8, 2012, the government moved to dismiss the action, contending that the corrective action had rendered the entire protest moot. Def.'s Mot. to Dismiss at 10, ECF No. 38. The government emphasized that contracting officers "have broad discretion to take corrective action where the agency determines that such action is necessary to ensure fair and impartial competition," *id.* at 9 (quoting *ManTech Telecomms. & Info. Sys. Corp. v. United States,* 49 Fed.Cl. 57, 65 (2001), *aff'd,* 30 Fed.Appx. 995 (Fed.Cir.2002) (per curiam)), and that "the Corps [as procuring authority for Customs and Border Protection] has and will carry out the remedial action in good faith," *id.* at 10 (citing *T & M Distribs., Inc. v. United States,* 185 F.3d 1279, 1285 (Fed.Cir.1999)). In the government's view, the corrective action "completely and irrevocably eradicated the effects of the alleged violations." *Id.* at 12 (quoting *Chapman Law Firm Co. v. Greenleaf Constr. Co.,* 490 F.3d 934, 940 (Fed.Cir.2007)).

McTECH responded to the government's motion to dismiss by invoking RCFC 15(a)(1)(B) as a basis for submitting an amended complaint as of right. *See* Pl.'s Opp'n to Def.'s Mot. to Dismiss at 2, June 8, 2012, ECF No. 46; Am. Compl., June 1, 2012, ECF No. 43 ("Am. Compl.").[5] By its Amended Complaint, McTECH reiterated its objections to the corrective action and its request for injunctive relief to ameliorate alleged deficiencies in the Corps' process for addressing organizational conflicts of interest and evaluating the pending offers.

The court held a hearing on June 13, 2012, to consider the pending motions. At that hearing, the court observed that both the amended complaint proffered with McTECH's motion for leave to file such a complaint and its subsequently filed amended complaint appeared to overlap. In addition, both addressed supplemental matters occurring after the original protest complaint had been filed. Hr'g Tr. 9:22 to 10:19 (June 13, 2012). The court concluded that RCFC 15(d) relating to supplemental pleadings applied rather than RCFC 15(a) concerning amended pleadings. *Id.* Because good cause had been shown for supplementation, however, the court allowed the supplemental complaint to stand as filed, and it deemed the motion for leave to file an amended complaint to be superseded. Hr'g Tr. 10:19–23.[6] Also at the hearing, the government reiterated its motion to dismiss on mootness grounds, with that motion now pertaining to the supplemental complaint. Hr'g Tr. 12:9–21. At this stage of the litigation, that motion is the primary focus of dispute.

## ANALYSIS

When McTECH filed its pre-award protest on February 22, 2012, this court acquired subject matter jurisdiction over this action under the first prong of 28 U.S.C. § 1491(b)(1), which grants this court "jurisdiction to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract." *See Asia Pac. Airlines v. United States,* 68 Fed.Cl. 8 (2005) (upholding jurisdiction over a pre-award protest of an agency decision to disqualify an offeror), *appeals dismissed,* 171 Fed.Appx. 837 (Fed.Cir.2006), 175 Fed.Appx. 346 (Fed.Cir.2006). With the Corps' post-complaint decision to reinstate McTECH in the procurement, however, the government has challenged the court's continuing jurisdiction, contending that "McTECH is on equal footing with all other offerors ... and can no longer claim to be an interested party with

---

4. On May 9, 2012, the court held a hearing on McTECH's application for a temporary restraining order and denied that application on the ground that McTECH had not shown any immediate injury attributable to the corrective action.

5. In pertinent part, that rule provides that "[a] party may amend its pleadings once as a matter of course within ... 21 days after service of a responsive pleading ... [or] 21 days after service of a motion under RCFC 12(b), (e), or (f), whichever is earlier." RCFC 15(a)(1), (a)(1)(B).

6. *See also Madison Servs., Inc. v. United States,* 90 Fed.Cl. 673, 681 (2009) (permitting filing of a supplemental complaint where new allegations concerned events that post-dated the original filing).

standing to seek to enjoin the agency's official role in conducting th[e] solicitation." Def.'s Reply to Pl.'s Resp. to Def.'s Mot. to Dismiss ("Def.'s Reply") at 2, June 12, 2012, ECF No. 47. In essence, although the government refers to a lack of standing, it claims that McTECH's pre-award protest has become moot.

 The salient question is whether the Corps' corrective action has "completely and irrevocably eradicated the effects of the alleged violation." *Chapman Law Firm,* 490 F.3d at 940 (quoting *County of Los Angeles v. Davis,* 440 U.S. 625, 631, 99 S.Ct. 1379, 59 L.Ed.2d 642 (1979)). On the one hand, "a case will not be rendered moot by subsequent acts if some of the requested relief remains available." *BLR Grp. of Am., Inc. v. United States,* 94 Fed.Cl. 354, 362 (2010) (quoting *Intrepid v. Pollock,* 907 F.2d 1125, 1131 (Fed.Cir.1990), and citing *Church of Scientology of Cal. v. United States,* 506 U.S. 9, 12, 113 S.Ct. 447, 121 L.Ed.2d 313 (1992)), *appeal dismissed,* 460 Fed.Appx. 918 (Fed. Cir.2011). On the other hand, where a defendant's actions have eliminated the possibility of meaningful relief, the case ordinarily should be dismissed as moot. *See Deakins v. Monaghan,* 484 U.S. 193, 200–01 & n. 4, 108 S.Ct. 523, 98 L.Ed.2d 529 (1988).[7]

The supplemental complaint by McTECH poses two main objections to the Corps' corrective action. First, in the amended complaint, McTECH avers that the corrective action will be implemented by a source selection team in the Corps' Fort Worth District Office "that ha[s] demonstrated an unwillingness, inability, lack of interest, or lack of competence to properly develop and reasonably implement an OCI inquiry that

comports with the rules governing OCI analyses," namely 48 C.F.R. Subpart 9.5, particularly Section 9.504. Am. Compl. ¶ 120. Second, McTECH alleges that the Corps' "corrective action plan is not reasonably broad enough in scope," Am. Compl. ¶ 119, principally because it focuses only on relationships of offerors with BrooAlexa Design J.V. and BrooAlexa LLC, even though at least six other vendors either contributed to the design or provided the Corps with a projected cost estimation for the construction of the designed buildings, *see* Pl.'s Reply to Def.'s Opp'n to Mot. for Leave to Amend ("Pl.'s Reply") at 3, June 4, 2012, ECF No. 44 (identifying six engineering and consulting firms, besides BrooAlexa Design J.V., that were listed on the project drawings).

McTECH's first objection has been ameliorated by a step taken by the Corps approximately a month after the corrective action reinstating McTECH. On May 31, 2012, the Corps issued Amendment 9 to the Solicitation, assigning a new Contracting Officer and Contract Specialist. *See* Am. Compl. Attach. 10 (Amendment 0009 to Solicitation (May 31, 2012)). McTECH nonetheless complains that the new procurement team works in the same office as the prior source selection officials and may consult with the prior officials in making procurement decisions. Pl.'s Reply at 3. These adjusted and elaborated claims by McTECH about the new source selection officials, however, are too attenuated and speculative to serve as a continuing basis for equitable relief. Functionally, the Corps has replaced the originally assigned procurement officials, just as McTECH sought in its prayer for relief of the amended complaint.

---

7. Several exceptions can prevent an otherwise moot case from being dismissed. For example, voluntary cessation by a defendant will not moot a case where a defendant could "return to his old ways." *United States v. Concentrated Phosphate Exp. Ass'n, Inc.,* 393 U.S. 199, 203, 89 S.Ct. 361, 21 L.Ed.2d 344 (1968) (quoting *United States v. W.T. Grant Co.,* 345 U.S. 629, 632, 73 S.Ct. 894, 97 L.Ed. 1303 (1953)); *see also Friends of the Earth, Inc. v. Laidlaw Env't'l Servs. (TOC), Inc.,* 528 U.S. 167, 189, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000) ("[I]t is well settled that 'a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power

to determine the legality of [a] practice.'") (quoting *City of Mesquite v. Aladdin's Castle, Inc.,* 455 U.S. 283, 289, 102 S.Ct. 1070, 71 L.Ed.2d 152 (1982)). Another exception pertains to circumstances where the challenged action is capable of repetition but would evade review. *See Weinstein v. Bradford,* 423 U.S. 147, 148–49, 96 S.Ct. 347, 46 L.Ed.2d 350 (1975) (per curiam) (citing *Southern Pacific Terminal Co. v. Interstate Commerce Commission,* 219 U.S. 498, 31 S.Ct. 279, 55 L.Ed. 310 (1911), as "the first case to enunciate the 'capable of repetition, yet evading review' branch of the law of mootness").

■ McTECH's second ground for contesting the Corps' corrective action has a firmer foundation, however. To date, the only questions about actual or potential OCIs posed by the Corps relate to any relationships that may exist between and among offerors and BrooAlexa Design J.V. and BrooAlexa LLC. *See* Am. Compl. Attach. 9 (Mem. from Linda Eadie to Prospective Offerors (May 4, 2012)). The Corps appears to have made no inquiries about relationships between and among offerors and the other engineering and consulting firms that worked with BrooAlexa Design J.V. on the design for the buildings to be constructed.[8]

■ The government's position also suffers from a legal flaw. It represents that McTECH is now on an "equal footing with all other offerors" and that it "can no longer claim to be an interested party with standing to seek to enjoin the [Corps'] official role in conducting this solicitation." Def.'s Reply at 2. This argument, however, conflates the concepts of mootness and standing. As the Supreme Court explained in *Laidlaw Environmental*, 528 U.S. at 189–90, 120 S.Ct. 693, mootness and standing have different procedural connotations. A plaintiff has the burden to show standing, but "a defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Id.* at 190, 120 S.Ct. 693 (citing *Concentrated Phosphate Export Ass'n*, 393 U.S. at 203, 89 S.Ct. 361). The Supreme Court noted that "there are circumstances in which the prospect that a defendant will engage in (or resume) harmful conduct may be too speculative to support standing, but not too speculative to overcome mootness." *Id.* Whether or not this is such a case insofar as standing is concerned, the government assuredly has not shown that McTECH's claims of unreasonableness of the Corps' corrective action are moot.

■ In addition, McTECH's objections to the scope of the Corps' corrective action plan and process for addressing OCIs arguably have to be brought at this pre-award stage of the procurement. Otherwise, McTECH might well risk having its objection foreclosed by application of the waiver rule enunciated in *Blue & Gold Fleet, L.P. v. United States*, 492 F.3d 1308 (Fed.Cir.2007). As Judge Allegra observed in *CRAssociates, Inc. v. United States*, 102 Fed.Cl. 698, 712 (2011), *appeal pending*, No. 2012–5037 (Fed. Cir.), "the rationale of *Blue and Gold* leads to the conclusion that a contractor should not be allowed to protest an agency's failure to identify and mitigate an OCI when the contractor knew about the alleged OCI from the start, but failed to assert it, via protest, prior to the award."

■ In sum, the court has juridical power to entertain a complaint challenging proposed corrective action, *see Wildflower Int'l, Ltd. v. United States*, 105 Fed.Cl. 362, 383–84 (2012); *CBY Design Builders v. United States*, 105 Fed.Cl. 303, 333 (2012); *Jacobs Tech. Inc. v. United States*, 100 Fed.Cl. 173, 176–77 (2011); *Sheridan Corp. v. United States*, 95 Fed.Cl. 141, 150 (2010), *appeal dismissed*, 453 Fed.Appx. 973 (Fed.Cir.2011); *Ceres Gulf, Inc. v. United States*, 94 Fed.Cl. 303, 316 (2010), and McTECH has stated a potentially viable challenge to the scope of the Corps' corrective action in the amended complaint.

## CONCLUSION

The government's motion to dismiss McTECH's amended complaint on mootness grounds is DENIED.

The parties shall file a joint status report on or before July 31, 2012, proposing a plan and schedule for further proceedings in this pre-award bid protest.[9]

It is so ORDERED.

---

8. McTECH supplements this asserted ground for relief by putting forward an affidavit indicating that [* * *] an anonymous source that [* * *]. *See* Am. Compl. Attach. 6 (Aff. of Vincent Carbone ¶¶ 20, 22 (Feb. 22, 2012)).

Recitations of and by anonymous informants have to be viewed with skepticism, as illustrated by the anonymous tip received by the original Contracting Officer regarding a relationship between McTECH and BrooAlexa LLC. The new Contracting Officer nonetheless will have a re-

sponsibility to investigate the most recent anonymous tip.

9. The government's motion to waive, or alternatively, to stay the need now to answer the amended complaint is GRANTED IN PART. The parties are requested to address the need for an answer in the joint status report due July 31, 2012.