Dexter CRANE and John R. Sudol, Appellants,

v.

William H. FAUVER, individually and in his capacity as Commissioner of the Department of Corrections of the State of New Jersey; Gary J. Hilton, individually and in his capacity as Superintendent of Trenton State Prison, and in his capacity as Assistant Commissioner of the Division of Adult Institutions, Department of Corrections, State of New Jersey and in his capacity as Hearing Officer at Trenton State Prison; and, Willis Morton, individually and in his capacity Supervisor of the Vroom Readjustment Unit, Trenton State Prison, and in his capacity as Assistant Superintendent of Trenton State Prison; and, William Jemison, individually and in his capacity as Assistant Superintendent of Trenton State and in his capacity as Hearing Officer of Trenton State Prison; and, Ronald Morton, individually and in his capacity as Senior Correction Officer at Trenton State Prison and in his capacity as Sergeant/Supervisor at Trenton State Prison; and, Ira Freidman, individually and in his capacity as Investigator, Polygraph Expert, Department of Internal Affairs, Department of Corrections, State of New Jersey.

No. 84–5406.

United States Court of Appeals, Third Circuit.

Argued Jan. 17, 1985.

Decided May 28, 1985.

Fredric J. Gross (Argued), Mount Ephraim, N.J., for appellants.

Irwin I. Kimmelman, Atty. Gen., James J. Ciancia, Asst. Atty. Gen., Nancy B. Stiles, Deputy Atty. Gen. (Argued), Trenton, N.J., for appellees.

Before HUNTER and HIGGINBOTHAM, Circuit Judges, and KELLY, District Judge.*

* Honorable James McGirr Kelly, United States District Court for the Eastern District of Pennsylvania, sitting by designation.

## OPINION OF THE COURT

A. LEON HIGGINBOTHAM, Jr., Circuit Judge.

This is an appeal from a summary judgment of the district court dismissing without prejudice the § 1983 complaint of appellants Dexter Crane and John R. Sudol. For the reasons that follow, we hold that the district court should have retained jurisdiction over this action while staying it pending the outcome of a related state proceeding. Accordingly, we will vacate the judgment of the district court and remand for further proceedings.

### I.

This appeal arises out of a complaint filed on January 31, 1983 by Crane and Sudol against appellees William H. Fauver, et al., pursuant to 42 U.S.C. § 1983 (1982), alleging violations of their constitutional rights in the course of proceedings leading to their discharge as Corrections Officers. Sudol, a Corrections Sergeant at the New Jersey State Prison at Trenton, was charged with conduct unbecoming an employee in public service, specifically, smoking marijuana while on duty. Crane was charged with failure to report Sudol's conduct.

In reviewing this grant of summary judgment for appellees, we take appellants' factual allegations as true and draw all inferences in their favor. The controversy began on January 1, 1981, when Trenton State Prison Corrections Officer Greg Conard took his assigned post in a guard tower at approximately 3:00 P.M., relieving appellee Ronald Morton from his guard position. Conard noticed a strong odor of marijuana, looked around the area and discovered two marijuana cigarette butts— one on the floor and another in an ash tray. Conard immediately reported the discovery to his superior, Vincent Augustoni. Appellants reported that they had conducted a weapons check of the guard tower on January 1, but that they had no knowledge of the marijuana.

Officer Ronald Morton was charged with possession of marijuana. On January 8, 1981, appellee Gary Hilton, the Superintendent of Trenton State Prison, presided over a departmental hearing regarding the charges filed against Morton. Appellants allege that during this hearing Morton testified that he had "no knowledge" of the marijuana in the guard tower. Morton was found guilty of the charge, but according to appellants' complaint no sanctions were imposed at that time.

Appellants allege that on the following morning, January 9, 1981, Ronald Morton was taken to see Hilton by appellee Willis Morton (his brother), the Trenton State Prison official who prosecuted him during the hearing. Appellants allege that at this point defendant Ronald Morton changed his earlier story and reported to Hilton that he had seen plaintiff Sudol smoke a marijuana cigarette on January 1, 1981, in the presence of Crane. Morton gave a written statement and agreed to a polygraph examination, which was taken a few days later by appellee Ira Freidman. Appellants allege that twenty-one days after Ronald Morton's change of story, Sudol was charged with smoking marijuana while on duty, and Crane was charged with failure to report Sudol's conduct.

On February 13, 1981, Hilton presided as Hearing Officer for the charges leveled against Crane, with Willis Morton again acting as prosecutor. Appellants allege that no witnesses were called by the Department of Corrections and that Hilton relied entirely upon Ronald Morton's polygraph examination and the written statements of several witnesses. Appellants allege that they were neither provided with the results of the polygraph examination prior to the hearing nor allowed to cross-examine Ronald Morton during the hearing. Although Crane testified that he did not see Sudol smoke marijuana in the guard tower on January 1, Hilton found Crane guilty of failure to report Sudol's alleged smoking of marijuana, and Crane was terminated effective February 20, 1981.

The hearing on the charges filed against Sudol took place on February 20, 1981, with appellee William Jemison as Hearing Officer and Willis Morton as prosecutor. Robert Reed, attorney for Sudol, objected to the introduction of much of the evidence because defendants had not complied with his written demands for discovery. He also objected to certain reports and written statements, because their authors were not called as witnesses by the Department of Corrections. Jemison ruled that Morton's polygraph examination was inadmissible. Officers Conard and Ronald Morton were called by the Department of Corrections and were cross-examined by attorney Reed. In addition to Sudol's own testimony denying any knowledge of marijuana in the guard tower on the morning in question, attorney Reed called Union representative Murphy (who had also appeared at Crane's hearing). Murphy testified that Ronald Morton had originally denied that Sudol or Crane had smoked marijuana in the guard tower on January 1, 1981. Sudol was found guilty of the charges brought against him and was terminated from his position at Trenton State Prison.

Sudol and Crane then appealed their terminations to the Civil Service Commission, and the matters were referred to the Office of Administrative Law to conduct the necessary hearings. Sudol and Crane made numerous oral and written requests for discovery materials from the Department of Corrections. The actions were consolidated and a hearing began before Administrative Law Judge Jeff S. Masin on February 1, 1982. Sudol and Crane moved to dismiss the charges for failure to comply with discovery requests. The motion was denied; however, the ALJ ordered the Department to provide the requested discovery within six days. After the Department presented its case on February 1, the hearing was adjourned until February 16. The Department still did not comply with discovery, and on March 10, 1982 the ALJ recommended that charges be dismissed and that appellants be reinstated with back pay.

Judge Masin's recommendation was accepted by the Civil Service Commission, which ordered that Sudol and Crane be reinstated with full back pay. The Department of Corrections appealed this ruling to the Superior Court of New Jersey, Appellate Division, asserting that the motions to dismiss should be reversed so that the cases could be decided on their merits. The appellants were reinstated on January 24, 1983, though without back pay.

On January 31, 1983 appellants filed their § 1983 complaint, alleging violations of their rights under the first, fifth and fourteenth amendments. Specifically, the complaint charged that Hilton was seeking to retaliate for Sudol's union activities, and that pressure was placed on Crane to obtain his cooperation in carrying out this vendetta, and thus abridge Sudol's first amendment rights. The complaint further charged that the appellees maliciously conspired to deprive appellants of their due process rights, by depriving them of the opportunity to cross-examine witnesses and to obtain discovery, by giving false testimony, and by failing to provide unbiased hearing officers. In short, as appellants state in their brief, the complaint "fairly asserts that a contrived charge was put to a kangaroo court on account of [Sudol's] union leadership and [Crane's] refusal to falsely denounce him." Appellants sought compensatory and punitive damages, as well as attorneys' fees under 42 U.S.C. § 1988.

On December 6, 1983, the Appellate Division reversed the Civil Service Commission's decision, stating that the ALJ should have imposed lesser sanctions than dismissal for noncompliance with discovery. The court remanded to the Civil Service Commission for a plenary hearing on the merits. Appellants filed a petition for certification to the New Jersey Supreme Court, which was denied on February 16, 1984.

A *de novo* hearing before ALJ Masin commenced on May 4, 1984, and was adjourned until June 8. On May 21, the district court granted appellees' motion for summary judgment and dismissed the

§ 1983 complaint without prejudice, stating:

> In light of the procedural history, defendants are correct that plaintiffs have not yet been deprived of procedural due process since the *de novo* hearing has not yet taken place.... Until the *de novo* hearing takes place, this court cannot make a valid determination of whether plaintiffs' due process (or any other) constitutional rights have been violated.... The present matter is not ripe for presentation to this Federal Court.

This appeal followed. On September 14, 1984, following the *de novo* hearing, Judge Masin issued an opinion finding for appellants on the merits, and again recommending that the charges be dismissed and that back pay be awarded. At oral argument before this court counsel stated that the Department has acquiesced in this decision and that no further state proceedings are contemplated.

## II.

█ The briefs and arguments in this case have been largely devoted to characterizing what the district court "really" did—did it actually abstain under the principles of *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and its progeny, or did it indeed abstain on the ground that appellants' federal claims were not "ripe" for adjudication?—and whether it acted properly on either ground. "Ripeness" doctrine, like abstention doctrine, may involve prudential considerations of "comity to state institutions", 13A C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3532.1, at 115 (1984), and when that occurs—as is the case here—the two doctrines become "closely mingled." *Id.* at 123. Because of the pure passage of time, as of the date of oral argument before our court, and in view of the procedural posture in which we find this case, with state proceedings now at an end, we find it unnecessary to untangle this doctrinal knot. Thus, our holding

today should not be considered an approval of the district court's abstention. Nevertheless, we will proceed on the assumption that the district court properly declined to exercise jurisdiction on the ground of comity, and thus limit our attention to the question of whether the district court, in declining to *exercise* jurisdiction over the federal claims, n onetheless should have *retained* that jurisdiction so that appellants may now have a federal forum in which to press any federal claims that remain unredressed, and seek any relief that was not available in the state proceeding.[1]

In *Williams v. Red Bank Board of Education,* 662 F.2d 1008 (3d Cir.1981), a *Younger* abstention case, the district court had dismissed the § 1983 claims of Williams—a suspended school teacher—in deference to a pending state administrative proceeding. Williams charged that her first and fourteenth amendment rights had been violated, and she sought damages and attorneys' fees. The only relief available in the state proceeding was a dismissal of the charges and award of back pay. 662 F.2d at 1022–23. We held that the district court erred in not retaining jurisdiction over Williams' federal claims:

> There were compelling reasons, both jurisdictional and practical, for retaining jurisdiction while staying the federal proceedings. As a matter of the proper exercise of the federal courts' jurisdiction, we cannot justify dismissing a claim for constitutional damages and consequent attorney's fees when the state forum is unable, as it is here, to grant that relief. Nor can we sustain such a dismissal even though it encourages a future complainant to return to federal court for the vindication of such claims. Such a course of action, aside from the practical difficulties it creates, is not consistent with the federal courts' duty to assume jurisdiction where jurisdiction properly exists.

---

**1.** The state contends that there is no additional relief that the federal courts may afford appellants. We cannot, however, so hold on the basis

of this record. These will be questions for the district court upon remand and fuller development of the record.

662 F.2d at 1023–24 (footnote omitted). The "practical difficulties" we referred to were the prospect that the statute of limitations might run on the federal claims by the time the claimant could return to federal court. 662 F.2d at 1024 n. 16.

 We find in this case the same circumstances that called for retention of jurisdiction in *Red Bank.*[2] Appellants, who sought constitutional damages and attorneys' fees, were relegated for prudential reasons to a state proceeding that could only afford them dismissal of the charges and back pay, with attorneys' fees only to the extent that the back pay award was reduced by interim earnings. N.J.Admin. Code tit. 4, §§ 4:1–5.5—4:1–5.6 (1984). It appears that if they had filed a new complaint in federal court upon termination of the state proceedings, it may very well have been time barred. Thus, under *Red Bank,* the district court should have retained jurisdiction.

This conclusion does not depend on whether the district court abstained under *Younger* principles, or under a related version of the "ripeness" doctrine that is informed by considerations of comity. As we said in *Red Bank:*

> All the doctrines of abstention have a common underlying purpose: to ensure the proper relationship between the state and the federal judiciary. The decision, in any given case in which abstention is ordered, whether to dismiss the action, or to retain jurisdiction over it and stay the federal proceedings, should be based on a consideration of what is appropriate to the circumstances of that case, and not simply on the label attached to the abstention. Here, such a consideration leads us to conclude that a stay of the federal action would have been the proper course for the district court to have taken.

662 F.2d at 1023 n. 15. *See also Forest Hills Utility Company v. City of Heath,* 539 F.2d 592, 596 (6th Cir.1976).

### CONCLUSION

For the foregoing reasons, the judgment of the district court dismissing appellants' complaint will be vacated, and the case remanded for proceedings consistent with this opinion.

---

**2.** We find no merit in appellees' contention that *Migra v. Warren City School District,* 465 U.S. 75, 104 S.Ct. 892 (1984) and *Allen v. McCurry,* 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980) require reconsideration of this aspect of *Red Bank.*