MARYLANDERS FOR FAIR REPRESENTATION, INC., et al.

v.

**William Donald SCHAEFER, et al.**

NATIONAL ASSOCIATION FOR the ADVANCEMENT OF COLORED PEOPLE, INC., et al.

v.

**William Donald SCHAEFER, et al.**

Civ. Nos. S–92–510, S–92–1409.

United States District Court, D. Maryland.

June 15, 1992.

---

Samuel L. Walters, Asst. Gen. Counsel, NAACP Sp. Contribution Fund, Deborah A. Jeon, American Civ. Liberties Union Foundation of Maryland, Baltimore, Md., and Perter C. Forbes, Morrison & Foerster, Washington, D.C., for plaintiffs.

Evelyn O. Cannon, Lucy A. Cardwell, Asst. Attys. Gen., Baltimore, Md., and Robert A. Zarnoch and Kathryn M. Rowe, Asst. Attys. Gen., Annapolis, Md., for defendants.

Before MURNAGHAN, Circuit Judge and MOTZ and SMALKIN, District Judges.

## MEMORANDUM AND ORDER

These two actions challenge the 1992 State legislative redistricting plan enacted by the Maryland General Assembly on the grounds that it violates the Voting Rights Act of 1965, 42 U.S.C. § 1973 et seq., and the Fourteenth and Fifteenth Amendments of the U.S. Constitution.[1] Civil No. S-92-510 is brought by Marylanders for Fair Representation, Inc. (alleged to be "a not-for-profit, non-partisan corporation") and two individual Republicans (one of whom is an African American registered voter of Prince George's County and the other of whom is a white registered voter of Baltimore County). Civil No. S-92-1409 is brought by the NAACP, its local and State affiliates in Maryland and several individual registered voters who are African American. Defendants are the Governor, the State administrative board of election laws and various other public officials.

A three-judge district court has been convened pursuant to 28 U.S.C. § 2284. Presently pending before us is a motion filed by defendants requesting us to dismiss or to stay the actions on abstention grounds pending review of the validity of the redistricting plan by the Maryland Court of Appeals.[2]

We are mindful, as defendants urge, that the Maryland Constitution confers original jurisdiction upon the Maryland Court of Appeals to consider constitutional challenges to a redistricting plan asserted by any dissatisfied registered voter in the State. Md. Const. art. III, § 5.[3] Acting with commendable speed, the Court of Appeals has already issued an order requiring that any such challenges to the 1992 plan be filed on or before July 1, 1992, and that the Maryland Attorney General respond to those challenges on or before August 31, 1992. See 19 Md.Reg. 793 (1992). If we were free to follow our own inclinations, we would defer our consideration of the issues presented in these cases until the Court of Appeals has had an opportunity to

1. In Civil No. S-92-510 plaintiffs also assert pendent claims under the Maryland Constitution.

2. Also pending before us is a motion to dismiss filed by Thomas V. Mike Miller, Jr., President of the Maryland Senate, and R. Clayton Mitchell, Jr., Speaker of the Maryland House of Delegates in Civil No. S-92-510. Miller and Mitchell have also been named as defendants in Civil No. S-92-1409. The issues pertaining to a possible dismissal of Miller and Mitchell in that action have not yet been briefed. Accordingly, we will defer consideration of those issues in both cases until a later stage of these proceedings.

3. It is not clear whether, as a matter of Maryland law, the Court of Appeals (rather than a State circuit court) has original jurisdiction over a statutory claim brought under the Voting Rights Act. Section 5 of Article III of the Maryland Constitution confers original jurisdiction upon the Court of Appeals only as to claims that "the districting of the State is not consistent with requirements of either the Constitution of the United States of America, or the Constitution of Maryland."

act upon any challenges asserted before it. It is self-evident that the task of apportionment and legislative redistricting, "dealing as it must with fundamental 'choices about the nature of representation,' is primarily a political and legislative process," *Gaffney v. Cummings*, 412 U.S. 735, 749, 93 S.Ct. 2321, 2329, 37 L.Ed.2d 298 (1973) (quoting *Burns v. Richardson*, 384 U.S. 73, 92, 86 S.Ct. 1286, 1296–97, 16 L.Ed.2d 376 (1966)), and that a federal court must take care not to "intrude upon state policy any more than necessary," *Whitcomb v. Chavis*, 403 U.S. 124, 160, 91 S.Ct. 1858, 1878, 29 L.Ed.2d 363 (1971). *See also Scott v. Germano*, 381 U.S. 407, 85 S.Ct. 1525, 14 L.Ed.2d 477 (1965); *cf. Maryland Committee for Fair Representation v. Tawes*, 377 U.S. 656, 674, 84 S.Ct. 1429, 1439, 12 L.Ed.2d 595 (1964) (encouraging state courts to hear challenges to apportionment plans).

Plaintiffs in these actions have, however, invoked federal jurisdiction to raise federal constitutional and statutory claims. We have a "virtually unflagging obligation ... to exercise the jurisdiction given [us]." *See Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817, 96 S.Ct. 1236, 1246, 47 L.Ed.2d 483 (1976). "Abdication of ... [our] obligation to decide cases can be justified ... only in the exceptional circumstances where ... [an] order to the parties to repair to the State court clearly would serve an important countervailing interest." *Id.* at 813, 96 S.Ct. at 1244. We cannot conclude that such circumstances exist here. To the contrary, we believe that the interests of comity, the efficient and economic use of judicial resources and the timely ordering of the electoral process all dictate that, instead of staying our hand, we seek to act in tandem with the Maryland Court of Appeals to the end that federal and state review of the legislative redistricting plan proceed simultaneously rather than sequentially.

Defendants argue that if the Court of Appeals were to invalidate the plan, either on federal or state grounds, its decision would nullify or at least modify the rulings which we are called upon to make. However, the reverse is likewise true. If we were ultimately to overturn the redistricting plan on federal grounds, decisions which the Court of Appeals had made in the interim might be nullified or substantially altered. This would prove to be particularly unfortunate if, before we acted, a revised plan had been established, pursuant to a directive of the Court of Appeals, based upon premises concerning federal law which we subsequently invalidated.[4] Were that to occur, the valuable time and resources of the Court of Appeals would be wasted, and unnecessary friction between the State and Federal courts might ensue.[5]

Under these circumstances we will not abstain from deciding the federal claims which plaintiffs have asserted here. However, we have conferred informally with the Maryland Court of Appeals to consider the feasibility of coordinating its proceedings with ours, including (potentially) establishing a joint schedule, cross-designating a single special master and holding joint hearings. Of course, as representatives of different sovereigns, we and the

---

4. The risk that such a result might occur is heightened by the fact that, presumably in order to avoid the danger of res judicata (and perhaps because of the uncertainty of the jurisdictional issue under Maryland law concerning the Voting Rights Act claims, *see* footnote 3, *supra*), the plaintiffs in the actions presently pending before us have chosen not to litigate the merits of their claims before the Court of Appeals. *Cf. Moses H. Cone Memorial Hosp. v. Mercury Constr. Co.*, 460 U.S. 1, 28, 103 S.Ct. 927, 943, 74 L.Ed.2d 765 (1983) (district court must conclude that "parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties" before granting stay or dismissal).

5. As to the element of time, defendants point out that candidates need not file for election under the new redistricting plan until July 5, 1994—more than two years from now. However, the apparent luxury of time may be illusory. Any decisions made now concerning the scheduling of proceedings must be premised upon the occurrence of a "worst case scenario." This would include the possibility that both Supreme Court review and the adoption of a new plan will be necessary. In any event, it is in the interest of the sound working of the political process to have the districting lines definitively drawn as soon as possible so that potential candidates and their supporters can responsibly plan their activities.

Court of Appeals must each ultimately make independent decisions on the questions falling within our respective constitutional spheres.[6] However, at least at this stage of the proceedings neither we nor the Court of Appeals perceive any institutional impediments to our working closely with one another on matters relating to the management and administration of this litigation.

For these reasons defendants' motion to dismiss or stay on abstention grounds is denied. We will, however informally stay these actions until July 15, 1992, to give us an opportunity to discuss further with the Maryland Court of Appeals the question of coordinated proceedings against the background of all challenges to the redistricting plan which are filed before it.

SMALKIN, District Judge, concurring in result:

I concur in the result of the majority's opinion denying the defendants' motion to dismiss this case. I believe, however, that this Court should refrain from exercising any adjudicative function in this case until after the Maryland Court of Appeals will have completed the review of the Governor's redistricting plan it is mandated to conduct under the Maryland Constitution.

The primacy of state judiciaries, with respect to redistricting issues, was recognized by the Supreme Court in *Scott v. Germano*, 381 U.S. 407, 85 S.Ct. 1525, 14 L.Ed.2d 477 (1965). There, the Court observed that "[t]he power of the judiciary of a state to require valid reapportionment or to formulate a valid redistricting plan has not only been recognized by this Court but appropriate action by the states in such cases has been specifically encouraged." *Scott*, 381 U.S. at 409, 85 S.Ct. at 1527. Thus, the clearest of messages was conveyed by the Supreme Court in *Scott* that, in redistricting cases, the appropriate state court should have the first opportunity to review the legislature's plan. The Supreme Court has never retrenched from the position it took in *Scott*. It therefore follows that a federal court should decline to hear challenges to a state redistricting plan until the state court has acted. Whether, in the procedural posture of the case before this Court, abstention is the appropriate vehicle for expressing the federal court's deference to the state judiciary, is primary among the issues we have been asked to consider by the parties.

The issue of abstention, although the primary focus of the written submissions and the oral proceedings in this case, was not clearly addressed by any of the parties presently before the Court. Furthermore, during oral argument, the defendants argued that this Court lacked jurisdiction to hear this case under the doctrine of ripeness. The failure of the parties to unravel the tangled doctrinal skeins of abstention and ripeness, particularly at the point where these two doctrines meet, has tended somewhat to cloud the case to date.

The defendants' position on ripeness was not fully developed during oral argument.

---

**6.** As mentioned in footnote 1, *supra,* the plaintiffs in Civil No. S–92–1409 have raised only federal claims but the plaintiffs in Civil No. S–92–510 have also raised certain pendent state claims. There is a substantial question as to whether we may properly consider the latter claims. *See Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). In any event, we anticipate that even if we were to conclude that we could consider those claims, we would decline to do so in deference to the Maryland Court of Appeals. That does not mean, however, that as a matter of comity we expect the Court of Appeals to defer to us on resolution of federal claims as to which its jurisdiction has been properly invoked. State courts have power equal to those of the federal courts to decide federal constitutional claims. It likewise appears that (the jur-

isdictional issue under Maryland law aside) state courts have concurrent jurisdiction with federal courts under the Voting Rights Act as well. *See Hathorn v. Lovorn,* 457 U.S. 255, 265–71, 102 S.Ct. 2421, 2428–31, 72 L.Ed.2d 824 (1982). Of course, we hope that if the Court of Appeals eventually rules upon any federal claims raised in the proceedings before it which overlap with those which we are called upon to decide, we will each reach the same conclusions as to them. However, even if we did not agree, the public interest will have been served by the coordinated proceedings. In that event the Supreme Court—which has ultimate authority to review the rulings made on federal issues both by us and the Maryland Court of Appeals— would be able to determine how it should proceed on the basis of a single factual record on which the legal issues would be clearly drawn.

Their contention was, however, essentially that, because the Maryland Court of Appeals has not yet acted upon the plan, the plan is not yet "final," and thus any challenge to it at this point is premature. All plaintiffs vehemently oppose the argument that their suit is not yet legally ripe for consideration, just as they oppose this Court deferring action under any variant of abstention. The point of the discussion at oral argument was to determine whether the plaintiffs' challenge to the plan should be considered by this Court before, after, or simultaneous with the Court of Appeals' determination. Unfortunately, the questions were not fully explored at oral argument. I believe that a brief analysis of ripeness and abstention, two doctrines that intersect and overlap, will show that this Court would be ill-advised to exercise its adjudicative powers prematurely.

The ripeness doctrine has its roots in both Article III "case or controversy" concepts and in discretionary policy concerns for refusing to exercise judicial power ("prudence"). In its most elemental form, the doctrine of ripeness is invoked to determine whether a particular dispute has developed to a point that merits decision. "The central concern [of the ripeness doctrine] is whether the case involves uncertain or contingent future events that may not occur as anticipated, or indeed may not occur at all." 13A Charles A. Wright, Arthur R. Miller and Edward H. Cooper, *Federal Practice and Procedure* § 3532, at 112 (1984). *See also Metzenbaum v. Fed. Energy Regulatory Comm'n*, 675 F.2d 1282, 1289–90 (D.C.Cir. 1982). The Supreme Court, in *Pacific Gas & Elec. Co. v. State Energy Resources Conserv. and Devel. Comm'n*, 461 U.S. 190, 201, 103 S.Ct. 1713, 1720–21, 75 L.Ed.2d 752 (1983), has noted that ripeness turns upon "the fitness of the issues for judicial decision" and "the hardship to the parties of withholding court consideration." That Court recently examined the ripeness doctrine in *Renne v. Geary*, — U.S. —, 111 S.Ct. 2331, 115 L.Ed.2d 288 (1991). At issue in *Renne* was the propriety of federal court action in a suit challenging the constitutionality of a California constitutional

provision prohibiting political parties from endorsing, supporting, or opposing candidates for non-partisan office. *Id.* at —, 111 S.Ct. at 2336. The *Renne* court found that postponing any federal action upon the questions before it under the doctrine of ripeness would have "the advantage of permitting the state courts further opportunity to construe [the statute in question] and perhaps in the process to 'materially alter the question to be decided.'" *Id.* at —, 111 S.Ct. at 2339 (citations omitted).

In large measure, the ripeness doctrine reflects the federal courts' inherent discretion in exercising their equity jurisdiction. *Couhig v. Brown*, 538 F.Supp. 1086, 1088 (E.D.La.1982) *quoting Wright, Miller & Cooper*. While the doctrine itself is easily comprehensible, it can nevertheless be particularly difficult to apply, especially in cases such as this, where attention is easily focused upon semantic distinctions and drawn away from examining the underlying policies upon which this Court should base its decision.

There is no question that the Maryland redistricting plan is final as far as the Maryland executive and legislative branches are concerned, and there is certainly a controversy before this Court, based on that plan. The difficulty rests in consideration of a myriad of future contingencies, many of which are squarely within the control of the Court of Appeals, that could shape this Court's future actions, or indeed its need to act at all, regarding the current redistricting scheme. Avoidance of unnecessary constitutional decisions and comity respecting state institutions, both of which should inform any decision in the present case, are among the prudential considerations that commentators have considered central when determining whether to apply the ripeness doctrine. *See Wright, Miller and Cooper, supra* § 3532.1, at 115.

While the ripeness doctrine is classically concerned with the justiciability of the issues before a court, the several doctrines of abstention involve the discretionary power of a court to decline to exercise the jurisdiction it undoubtedly has over certain issues before it. The seminal case on ab-

stention is *Railroad Commission of Texas v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). Under the *Pullman* doctrine, abstention from the exercise of federal jurisdiction, pending a state court's resolution of underlying issues of state law, is appropriate, "[w]here resolution of the federal constitutional question is dependent upon, or may be materially altered by, the determination of an uncertain issue of state law ... in order to avoid unnecessary friction in federal-state relations, interference with important state functions, tentative decisions on questions of state law, and premature constitutional adjudication." *Harman v. Forssenius*, 380 U.S. 528, 534, 85 S.Ct. 1177, 1181–82, 14 L.Ed.2d 50 (1965). There is no uncertain issue of state law pleaded in the complaints before this Court, and therefore abstention under the *Pullman* doctrine itself would not be appropriate.

Inherent within the *Pullman* decision, however, is a respect for the relations between federal and state courts, and a caution with regard to federal interference in important state issues, which underlies the variant of abstention more properly applicable to the facts in this case, as first articulated in the case of *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).[1] Although *Younger* was originally limited to cases involving state criminal proceedings commenced before the federal civil case, it has been extended well beyond these boundaries by a string of Supreme Court decisions: *See, e.g., Hicks v. Miranda*, 422 U.S. 332, 95 S.Ct. 2281, 45 L.Ed.2d 223 (1975) (state criminal proceeding instituted *after* federal suit filed, but prior to any proceedings of substance on the merits of the federal claim); *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975) (federal court should abstain where state *civil* litigation is involved, if state litigation is akin to criminal proceedings); *Juidice v. Vail*, 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977) (abstention appropriate in state contempt proceeding, even though not quasi-criminal,

because an important state interest is involved); *Trainor v. Hernandez*, 431 U.S. 434, 97 S.Ct. 1911, 52 L.Ed.2d 486 (1977) (important state interest in state's attempt to recover welfare payments merited abstention); *Moore v. Sims*, 442 U.S. 415, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979) (state action in seeking custody of allegedly abused children was important state interest requiring abstention); *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982) (state bar disciplinary proceedings constitute an important state interest). *See also California Democratic Congressional Delegation v. Eu*, 790 F.Supp. 925 (N.D.Cal.1992) (abstention appropriate in Congressional redistricting case where prior state proceedings were instituted).

The Supreme Court has set out a three-part test to determine whether abstention is appropriate in a given case. "*[F]irst*, do [the state court proceedings] within the constitutionally prescribed jurisdiction of the State Supreme Court constitute an ongoing state judicial proceeding; *second*, do the proceedings implicate important state interests; and *third*, is there an adequate opportunity in the state proceedings to raise constitutional challenges." *Middlesex County Ethics Comm.*, 457 U.S. at 432, 102 S.Ct. at 2521. If this test is met, "and so long as there is no showing of bad faith, harassment, or some extraordinary circumstance that would make abstention inappropriate, the federal courts *should* abstain." *Id.* at 435, 102 S.Ct. at 2523 (emphasis supplied).

Clearly, the *Middlesex* test is met in the case before us. There are state court proceedings that are ongoing and that implicate an important state interest. Indeed, it is difficult to think of a more important interest any state has than the process by which its citizens elect their legislators. Furthermore, the state court proceedings provide an adequate opportunity to raise constitutional challenges to the Governor's

---

**1.** The defendants have also cited this Court to the abstention doctrine in *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943). *Burford* abstention is applicable to cases involving complex state regulatory policies, which is not the case here.

redistricting plan. Art. III, section 5 of the Maryland constitution specifically provides that the Court of Appeals may grant relief if it finds that the legislature redistricted the state in violation of the United States constitution (and/or the Maryland Constitution, of course). State courts also have concurrent jurisdiction over the Voting Rights act. *Hathorn v. Lovorn*, 457 U.S. 255, 268–69, 102 S.Ct. 2421, 2429–30, 72 L.Ed.2d 824 (1981). As a federal three-judge court sitting in a Congressional redistricting case recently noted:

> Where, as here, Congress has provided concurrent jurisdiction over the claims, the test is not whether the [state court] is the best or the ideal forum for litigation of redistricting issues. Rather, the adequacy which *Middlesex* and *Younger* require is only the providing of due process for the adjudication of the federal rights. Once the state provides a forum that accords the parties due process, the United States Supreme Court considers that state forum to be as competent as federal courts for the adjudication of federal issues. *California Democratic Congressional Delegation*, 790 F.Supp. at 932.

Thus any claims that the plaintiffs bring before this Court could be entertained by the Maryland Court of Appeals.[2]

It often has been said that abstention from exercising federal jurisdiction is the exception and not the rule. Indeed, the Supreme Court itself so stated, at least with regard to *Pullman* abstention, in *Colorado River Water Cons. Dist. v. United States*, 424 U.S. 800, 813, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976):

> The doctrine of abstention, under which a District Court may decline to exercise or postpone the exercise of its jurisdiction, is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it. Abdication of the obligation to decide cases can be justified under this doctrine

only in the exceptional circumstances where the order to the parties to repair to the State court would clearly serve an important countervailing interest. *Quoting, Allegheny County v. Frank Mashuda Co.*, 360 U.S. 185, 188–189, 79 S.Ct. 1060, 1062–63, 3 L.Ed.2d 1163 (1959).

It is language such as this which, the plaintiffs argue, requires that this Court should not abstain in this case. But this argument misses the point. This Court could not abstain under *Pullman*, even if it wanted to. The factual situation before us is simply not amenable to abstention as articulated under the *Pullman* doctrine. It is, however, both permissible and appropriate for this Court to abstain under *Younger*. The *Middlesex* test has been met, and the Supreme Court has encouraged federal courts to abstain, under *Younger*, where it is possible for them so to do, as noted above.

Based on the above analysis, it appears that the case before us has elements of both the ripeness doctrine, in that the issues before us are contingent upon future events, and *Younger* abstention, in that important state interests are involved that can be resolved in a pre-existing state forum to which the plaintiffs have access. It appears, therefore, that this case lies on the murky cusp of the ripeness and abstention doctrines.

That such a an intersection of doctrines occurs in cases such as the one before this Court has been recognized by numerous courts and by federal practice commentators:

> Ripeness becomes closely mingled with abstention doctrines when deference rests on the prospect of some future state court proceeding rather than an ongoing litigation.... [C]ases ... have mingled ripeness with abstention, at times concluding that although a justiciable controversy was presented abstention should be ordered in the hope that the

---

**2.** It is, perhaps, significant that the *Middlesex* test does not *require* the plaintiffs to bring their federal claims in the state court—merely that it is *possible* for them to have their claims heard there. Thus the possible *res judicata* effect of the plaintiffs' raising the federal issues involved here in state court is not an issue to be considered when analyzing the facts under the *Middlesex* test.

federal issues might be altered or avoided by state court action, and at times refusing to abstain. Both justiciability and abstention doctrines share the concern that further development of state law may alter or avoid federal questions, just as further development of a fact situation may do. *Wright, Miller and Cooper, supra,* § 3532.1, 123–25 and cases cited therein.

In *Crane v. Fauver,* 762 F.2d 325 (3rd Cir.1985), the Third Circuit addressed the nexus of the abstention and ripeness doctrines in reviewing a district court's non-prejudicial dismissal of a case brought under 42 U.S.C. § 1983, pending the outcome of a related state proceeding. *Id.* at 326. Some confusion existed regarding whether the district court had abstained under the doctrines articulated in *Younger* and its progeny, or whether the court had acted on the basis that the federal claims were not yet ripe for adjudication. The *Crane* court noted that ripeness, like abstention, "may involve prudential considerations of 'comity to state institutions'," and that, when such factors come into play "the two doctrines become 'closely mingled.'" *Id.* at 328 (citations omitted). In the case before it, however, the *Crane* court saw no need to "untangle th[e] doctrinal knot" to determine the actual basis upon which the district court acted. Instead, the Third Circuit held that, while it assumed the district court's decision not to exercise its discretion was proper, the trial court nonetheless should have retained jurisdiction over the plaintiff's case to ensure a forum for any remaining, unaddressed federal claims. *Id.* at 328.

The present case is a clear example of the commingling of ripeness and abstention noted in *Crane.* Rather than attempt to unravel this Gordian knot of doctrinal complexity, it is simpler to cut through to a practical result. Federal jurisdiction should not be given up lightly, and therefore I believe that the more satisfying result is to abstain, while at the same time retaining jurisdiction to decide any issues remaining in the wake of a final decision by the Court of Appeals of Maryland. I believe that this result satisfies the require-

ments of prudence and precedent. It also recognizes the unique role that the Maryland Constitution allocates to the Court of Appeals, by giving it original—and plenary—jurisdiction in redistricting cases, thus bringing all three branches of Maryland's government into the redistricting process before true finality is achieved.

Generally speaking, courts should avoid wasting time, that most precious of all judicial resources. This general rule has given rise to certain principles that "govern in situations involving the contemporaneous exercise of concurrent jurisdictions ... by state and federal courts. These principles rest on considerations of '[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.'" *Colorado River Water,* 424 U.S. at 817, 96 S.Ct. at 1246 (citations omitted). The general rule involved in concurrent state and federal jurisdiction is that "the pendency of an action in state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." *Id.* (citations omitted). Though this rule indeed results in duplication of effort, waste of time, and unseemly jockeying for litigative position, it is the law and must be obeyed. Because, however, this general rule ignores the existence of abstention, it is not dispositive here.

There was discussion during oral argument about whether this Court should, in essence, compel the Maryland Court of Appeals to perform a potentially futile act. The futility presumably would arise from the Court of Appeals reviewing, and approving, a plan which we might then invalidate on federal grounds and send back to the Maryland legislature or reform ourselves. Even assuming that we might, in the future, come to such a pass, it is by no means clear to me that the actions of the Court of Appeals would thereby be rendered futile. "Futility" is described as "a useless act or gesture" in the dictionary. *Webster's Ninth New Collegiate Dictionary* 500 (1st ed. 1986). I am not persuaded, however, that the Maryland Court of Appeals would be performing a useless

act or gesture by performing its review of the Governor's redistricting plan, as mandated by the Maryland constitution, any more than any court engages in a useless act when its decision is subject to question by a different court. Were this futility, no trial court, or intermediate appellate court, would ever act meaningfully.

I am concerned that the potential for futility might be enhanced by the suggestion of the majority that we proceed in tandem with the Maryland Court of Appeals. If we act in this fashion, there are four possible outcomes: one, both courts might approve the plan; two, both courts might disapprove the plan; three and four, one or other court might approve the plan and the other disapprove it. Two of these outcomes would render our action in deciding any federal issues superfluous. Should the Court of Appeals disapprove the plan, then the plan we were considering will not become the law of the state. Any opinion we issue with regard to that plan would then be nothing more or less than an advisory opinion—*itself* prohibited by Article III of the United States Constitution—on the constitutionality of the federal questions raised by the plaintiffs. Furthermore, were the two courts to disagree, there might not be meaningful progress toward the comprehensive disposition of all claims in litigation.

If, however, this Court were to abstain, the result would be somewhat different. We would only consider the plan now in suit if the Court of Appeals approved it as it now stands. Were we to invalidate the plan on federal constitutional grounds, we would, to be sure, also render the Court of Appeals' decision moot. This is, however, a possibility even if we conduct the joint fact-finding suggested by the majority. Rather than rendering the Court of Appeals' actions futile, our *Younger* abstention would satisfy the mandated state process, while allowing the plaintiffs to voice their concerns about the federal constitutional issues in the forum of their choice. *Younger* abstention is, therefore, a more efficient way of proceeding and saves our judicial resources until there is a need to expend them. Furthermore, it would aid in the comprehensive disposition of litigation, because our participation in the process would be delayed until it was clear that we were required to act.

Finally, as noted above, there is a possibility that the plan currently under consideration will simply not be implemented, as a result of its review by the Court of Appeals (where anyone may join in the current proceedings until July 1, 1992). Should this happen, plaintiffs will have lost nothing, and their civil rights will be unimpeded. Would it not be sensible to delay all federal adjudication until we know both whether or not there is a final plan for us to act upon and just what that plan is? I am convinced that the answer is "yes." I thus believe that we can abstain and that we should abstain.

Although I am of such an opinion, I concur in the result of the majority opinion, *i.e.*, denial of the defendants' motions to dismiss, because the abstention doctrine applicable here—as laid out *ante*—does not permit dismissal.